VINCENT DUNN, PLAINTIFF, v. GEORGE CUTLEY, DEFENDANT.

Decided August 20, 1930.

Before GUMMERE, CHIEF JUSTICE, and Justice CAMPBELL.

For the rule, *McDermott, Enright & Carpenter*.

*Contra, Breslin & Breslin*.

PER CURIAM.

This suit is brought upon a promissory note, signed by the defendant, dated on the 6th of April, 1925, and made payable to his own order at the expiration of two months from its date at the National Bank of North Hudson, in the city of Hoboken. It is conceded that he was an accommodation maker. The note was endorsed by A. R. L'Hommedieu and two others and was given by Cutley to L'Hommedieu for the latter's accommodation in order to enable him to straighten out financial difficulties in which he found himself with the First National Bank of Stroudsburg. The defendant Cutley is a member of the bar of this state and had been employed to wind up an estate in which L'Hommedieu was interested as a legatee and devisee; and two days after signing the note he wrote the following letter to the president of the Stroudsburg bank: "April 8th, 1925. Mr. William L'Hommedieu, First National Bank, Stroudsburg, Pa. Dear Sir: In an endeavor to get the matter of the L'Hommedieu estate settled it has become necessary for me to personally try to help Mr. Arthur L'Hommedieu financially. I will tell you just what I have done. In addition he tells me that he has obligations with your bank which, due to peculiar reasons, you must eliminate from your institution. I am enclosing note for $5,000 made by me, Mr. L'Hommedieu and his two daughters. In addition to that, these three parties are willing to assign as further protection all their right, title and interest in and to the L'Hommedieu estate. However, this does not seem to be necessary because I am positively sure that the whole matter will be settled within thirty days, but I have made the note for two months

because sometimes in legal proceedings things do not eventuate on the day you anticipate. There is no reason why this proceeding in New Jersey will not be closed within the month. Yours sincerely, George E. Cutley."

Something like two weeks after this letter was mailed Cutley received a letter from the cashier of the Stroudsburg bank stating that the note had been discounted. The fact was that it had not been discounted for its face value but was canceled by the bank to the extent of $3,000 and the remaining amount then credited to the account of Arthur L'Hommedieu to the extent of $2,000. There is nothing in the proofs to indicate that Arthur L'Hommedieu ever drew out a single penny from the money so credited to his account. The testimony given by the defendant on the witness-stand showed that about a month after the making of the note he called up the bank on the telephone and informed the president that the time had arrived for the settlement of the estate in which Arthur L'Hommedieu was interested and for the distribution of the funds thereof; and that he had reserved $5,000 of the money belonging to Arthur as one of the distributees of the estate for the purpose of covering the note; and that the president then told him that he need not hold this money because the note was not any good to the bank. He thereupon paid L'Hommedieu the $5,000 which he had reserved. Subsequently the bank called upon Cutley to pay the note, and upon his refusal to do so, assigned it to Vincent Dunn, the present plaintiff, who thereupon brought suit against Cutley for the moneys claimed to be due from him as the maker thereof. The case in due course went to trial and a verdict was rendered in favor of the defendant. The present rule was allowed to test the validity of that verdict.

In its charge to the jury, the court instructed the members thereof that if they believed the testimony of Cutley that he was induced to pay over this reserve fund of $5,000 to Arthur L'Hommedieu by reason of the statement made by the president of the bank, the bank was estopped thereafter from enforcing against Cutley his obligation under the note,

and the question involved in the present rule is whether the court was right in leaving this matter to the jury as the determining factor in the case. In 10 *R. C. L.* 697 it is stated that the final element of an equitable estoppel is that the person claiming it must have been misled into such action that he will suffer injury if the estoppel is not declared. That is, the person setting up the estoppel must have been induced to alter his position in such a way that he will be injured if the other person is not held to the representation or attitude upon which the estoppel is predicated. An equitable estoppel protects the party setting it up from a loss which, but for the estoppel, he could not escape. We consider that this is a sound legal principle and that it is applicable to the present case. The jury resolved this crucial fact in favor of the defendant and their finding was justified by the evidence. The present plaintiff, as the proofs show, accepted the assignment of the note from the Stroudsburg bank long after the note fell due, and merely for the purpose of representing the bank in this suit. In this situation the estoppel applies not only to the bank but to the plaintiff as its assignee.

The rule to show cause will be discharged.